FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LORRAINE W., ) No. 1:18-CV-03223-LRS
)
    Plaintiff, ) **ORDER GRANTING**
) **PLAINTIFF'S MOTION FOR**
    vs. ) **SUMMARY JUDGMENT,**
) *INTER ALIA*
COMMISSIONER OF SOCIAL )
SECURITY, )
)
    Defendant. )
_____ )

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 18).

## JURISDICTION

Lorraine W., Plaintiff, applied for Title II Social Security disability insurance benefits (SSDI) on December 26, 2012. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on March 9, 2015, before Administrative Law Judge (ALJ) Wayne N. Araki. Plaintiff testified at the hearing, as did Vocational Expert (VE) Kimberly Mullinax. On March 27, 2015, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision.

Plaintiff appealed to U.S. District Court and on May 23, 2017, stipulated with the Commissioner to a remand for further administrative proceedings. (ECF No. 17 in 1:16-CV-03170-SMJ). The court approved the stipulation and ordered the remand. (ECF No. 18 in 1:16-CV-03170-SMJ).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

A second administrative hearing was held on May 17, 2018, before ALJ Araki. Plaintiff testified at the hearing, as did VE Doug Lear. On September 27, 2018, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a high school education and past relevant work experience as a fast food service manager. She alleges disability since June 1, 2012, on which date she was 41 years old. Her date last insured for SSDI benefits was September 30, 2017.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) not properly assessing the medical opinions; 2) failing to fully credit Plaintiff's testimony; and 3) failing to meet his Step Five burden.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in

the national economy. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medical impairments which include the following: degenerative disc disease in the lumbar spine; osteoarthritis; joint disorder and morbid obesity;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations: she can lift or carry up to 10 pounds occasionally and less than 10 pounds frequently; she can stand or walk at 2-hour intervals per day with normal breaks; she can sit for 2-hour intervals with stretch breaks and/or positional shifts for 8 hours per day with normal breaks; she cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs as well as balance, stoop, kneel and crouch; she cannot crawl; she can occasionally reach overhead with the non-dominant upper left extremity; she is able to have occasional exposure to extreme heat or cold; and she cannot have exposure to vibrations or hazards;

4) Plaintiff's RFC does not allow her to perform her past relevant work;

5) Plaintiff's RFC allows her to perform other jobs existing in significant numbers in the national economy as identified by the VE Lear, including charge account clerk, document preparer and surveillance system monitor.

Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### A. William Drenguis, M.D.

At the behest of the Commissioner, a consultative examination by William Drenguis, M.D., was arranged for the Plaintiff on March 9, 2013. Dr. Drenguis noted the Plaintiff was 5' 8" and weighed 387 pounds. Based on his examination, he diagnosed Plaintiff with the following: 1) morbid obesity with deconditioning; 2) mild DJD (Degenerative Joint Disease) of the lumbar spine; 3) bilateral knee DJD; and 4) left shoulder impingement syndrome. (AR at p. 342). Dr. Drenguis opined that Plaintiff's "morbid obesity is markedly exacerbating her symptoms of chronic lumbar DJD and osteoarthritis of her knees." (*Id*.). He further opined: 1) Plaintiff's maximum standing and walking capacity in an eight-hour workday with normal breaks is about three hours as she is limited by her chronic lumbar DJD and osteoarthritis of her knees; 2) Plaintiff's maximum sitting capacity in an eight-hour

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

workday with normal breaks is about four hours as she is limited by her lumbar DJD and bilateral knee osteoarthritis; 3) Plaintiff's maximum lifting and carrying capacity is about 20 pounds occasionally and 10 pounds frequently because she is limited by her bilateral knee osteoarthritis and lumbar DJD; 4) Plaintiff should never climb, balance, stoop, kneel, crouch or crawl; and 5) Plaintiff may occasionally reach due to her left shoulder impingement syndrome. (*Id.*).

The ALJ gave "some" weight to "Dr. Drenguis's opinion for light exertional work." (AR at p. 470). According to the ALJ:

> It appears [Dr. Drenguis] relied in part on the claimant's subjective symptoms in assessing her maximum physical residual functional capacity in spite of his extremely detailed objective testing. [Citation omitted]. As I articulate above, the objective findings from his exam were relatively mild in that she had very little tenderness on palpation. Her restricted lumbar ROM was in part due to obesity. His examination findings are not consistent with the assessed limitations. His assessed limitations were somewhat inconsistent in that he clearly documented her activities like driving. This activity alone would involve some level of stooping, for instance. She also traveled to Hawaii. She was not someone who was completely incapable of engaging in postural movements, as he indicated in his evaluation. Nor did his direct observation and the diagnostic test results support such conclusions . . . . However, I accept that she is more limited than the light exertion level, and accordingly reduce her exertional capacity to the sedentary level.

(*Id.*).

The ALJ found Plaintiff's exertional capacity was less than that opined by Dr. Drenguis regarding lifting, sitting, standing and walking capabilities. The ALJ concluded Plaintiff had a capacity for less than the full range of sedentary work "[g]iven that the evidence showed exacerbations of pain and fatigue, partly due to medication side effects" (AR at pp. 469-70) and "the medical record showed that she could not walk or stand for more than 2 hours in a workday due to the effects of obesity (and its effect on her other impairments)." (AR at p. 470). For these reasons, the ALJ also only gave "some" weight to the July 2013 opinion of non-examining

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

state agency physician, Norman Staley, M.D., who the ALJ deemed to have concluded that Plaintiff retained the exertional capacity for light work. (AR at p. 470). While Dr. Staley opined Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, consistent with the lifting requirements for light work set forth in 20 C.F.R. §404.1567(b), he also opined that Plaintiff was capable of standing and/or walking for a total of two hours in an 8-hour workday and sitting for a total of six hours which is more consistent with "sedentary" work. 20 C.F.R. §404.1567(a). (AR at p. 93). And indeed, the disability adjudicator/examiner concluded Plaintiff had a maximum sustained work capability for "sedentary work." (AR at p. 96).

Dr. Drenguis did not explicitly opine Plaintiff was capable of "light" work as defined in 20 C.F.R. §404.1567(b). Moreover, he did not opine that Plaintiff had the exertional capacity (be it "light" or "sedentary") to get through an eight hour workday. His opinion accounted for only seven hours in an eight hour workday: standing/walking for three hours and sitting for four hours. The ALJ did not, at least explicitly, take issue with Dr. Drenguis's opinion about Plaintiff's exertional capabilities. What he explicitly took issue with was Dr. Drenguis's opinion regarding the severity of Plaintiff's non-exertional limitations, specifically postural limitations, asserting that certain of Plaintiff's activities (e.g., driving, travel to Hawaii) were inconsistent with those limitations.[1]

To the extent, however, the ALJ did take issue with Dr. Drenguis's opinion about Plaintiff's exertional capabilities, all he offered was his own lay opinion that

---

[1] Dr. Drenguis opined that Plaintiff should never be required to stoop in a work setting. He did not say that Plaintiff was incapable of stooping for all purposes, even stooping incidental to driving a car. Plaintiff's travel to Hawaii is discussed *infra*.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

the results of the doctor's objective testing did not support the limitations opined by him.[2] It is not apparent that the ALJ relied on the opinion of Dr. Staley or any other physician (examining or non-examining) in concluding Dr. Drenguis's objective testing results did not support the limitations opined by him. Dr. Drenguis was entitled to consider Plaintiff's subjective reporting about her symptoms and limitations and there is no indication he relied on that to a greater extent than he relied on his observations of Plaintiff and the results of the objective testing. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ did not find that Dr. Drenguis relied more heavily on Plaintiff's self-report than the doctor's own clinical observations and objective testing results. *Id*.

In sum then, the ALJ did not offer legitimate reasons for discounting the exertional limitations opined by Dr. Drenguis.[3] According to the doctor, those limitations allowed Plaintiff to engage in standing/walking and sitting for less than eight hours a day. As acknowledged by VE Mullinax at the first administrative hearing, that is not full-time work (AR at p. 71) and indicates Plaintiff cannot perform sustained work-related physical activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96-8p. This alone is sufficient to find the ALJ's decision is not supported by substantial evidence and declare Plaintiff

---

[2] Dr, Drenguis's objective testing results are further discussed *infra* in connection with the ALJ's reasons for discounting Plaintiff's testimony regarding her symptoms and limitations.

[3] The court will assume Dr. Staley's physical RFC opinion conflicts with the RFC opinions opined by Dr. Drenguis and treating physician, Erica Moyer, D.O., and apply the "legitimate reasons" standard.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

disabled.

### B. Erica Moyer, D.O.

The ALJ similarly did not offer legitimate reasons for discounting the opinions of Plaintiff's treating physician, Erica Moyer, D.O.. Her opinions are consistent with those of Dr. Drenguis. Dr. Moyer began treating Plaintiff in October 2012. (AR at p. 413). In September 2013, Dr. Moyer wrote that Plaintiff needed to lie down a few hours each day due to pain in her back and hips. (*Id.*). At that time, the doctor thought Plaintiff's prognosis was good if different forms of treatment could be pursued. (*Id.*). The doctor opined it was "unclear" if work on a regular and continuous basis would cause Plaintiff's condition to deteriorate and she was unable to adequately assess how many days on average the Plaintiff would miss work during a month. (AR at p. 414). Dr. Moyer indicated Plaintiff's exertional capacity was limited to "light" work. (*Id.*).

In October 2014, Dr. Moyer indicated Plaintiff did not need to lie down during the day and that work on a regular and continuous basis would not cause Plaintiff's condition to deteriorate, "[b]ut she's likely unable to sit, stand, walk for any prolonged time, long enough to satisfy the requirements of a job right now." (AR at pp. 416-17). This time, Dr. Moyer indicated Plaintiff would miss work on average four days a month. She indicated these limitations had existed since October 2012 when she first started seeing the Plaintiff, and opined that she thought Plaintiff wanted to work, that it was difficult for her to do so at this time, but with appropriate therapy and strengthening, she would be able to work in the future. (AR at p. 417).

In November 2017, Dr. Moyer again indicated Plaintiff did not need to lie down during the day. (AR at p. 781). She again indicated that work on a regular and continuous basis would not cause Plaintiff's condition to deteriorate, "[b]ut she's likely not able to sit, stand, walk for long enough at this time to satisfy the

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 10**

requirements of employment." (AR at p. 782). Dr. Moyer again indicated Plaintiff would miss work on average four days a month. (*Id.*).

The ALJ gave "some" weight to Dr. Moyer's 2013 opinion, noting that his finding that Plaintiff could perform "sedentary" work was more restrictive than Dr. Moyer's opinion that Plaintiff could perform "light" work. (AR at p. 471). The ALJ gave "little" weight to Dr. Moyer's 2014 opinion. He observed that in October 2014, Dr. Moyer did not indicate that Plaintiff needed to lie down and did not explain this discrepancy with her 2013 opinion. (AR at p. 472). The ALJ cited Dr. Moyer's treatment notes from February 2014 at which time Plaintiff reported that her pain was "unchanged" and she was able to function better when she took pain medication. (AR at p. 428). The ALJ observed that the February 2014 treatment notes contained no reference to Plaintiff reporting she was unable to stay in any position for too long, whereas Plaintiff did report that to Dr. Moyer in October 2014. (*Id.*).

It is not entirely clear why in September 2013, Dr. Moyer expressly indicated Plaintiff needed to lie down a few hours each day due to pain, but expressly indicated otherwise in October 2014. It is noted, however, that while in October 2014, Dr. Moyer checked the "no" box regarding whether Plaintiff needed to lie down during the day (AR at p. 416), in explaining her opinion that Plaintiff would miss on average four or more days of work per month, she wrote that Plaintiff "indicated that she must be moving often but also has exacerbations where she needs to lay down or sit." (AR at p. 417). The same is true regarding Dr. Moyer's November 2017 assessment. (AR at pp. 781-82). As such, the apparent discrepancy in Dr. Moyer's opinions regarding Plaintiff's need to lie down is not a legitimate reason to discount her opinions.

Plaintiff reported in both September 2013 and October 2014 that she had difficulties staying in any position for too long. In September 2013, she said her pain made it difficult to sit or stand still for much more than 20 to 30 minutes at any one time. (AR at p. 433). In October 2014, she reported she was unable to stay in any

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

position for too long. (AR at p. 425). The Plaintiff's consistency makes the lack of any reference in Dr. Moyer's February 2014 treatment note to Plaintiff's inability to stay in any position for too long insignificant and not a legitimate reason for discounting the doctor's October 2014 opinion.

According to the ALJ, Dr. Moyer's November 2017 opinion adopted the reasoning from her October 2014 opinion despite the treatment notes corresponding to the November 2017 opinion not involving significant complaints of back pain and the November 1, 2017 treatment note not mentioning back pain at all. (AR at p. 472). According to the November 1, 2017 treatment note, the purpose of that visit was to follow up on Plaintiff's weight loss effort and her complaints of knee pain and neuropathy symptoms in her feet. (AR at p. 810). Nevertheless, the treatment note also stated that Plaintiff had "known DJD of her knees bilaterally as well as her lumbar spine" and her "Active Problem List" included "Degenerative disc disease, lumbar." (*Id.*).

The ALJ concluded Dr. Moyer's 2014 and 2017 opinions "relied heavily on the [Plaintiff's] self-reports" which the ALJ did "not view to be a reliable or accurate source of information." (AR at p. 472). The ALJ did not conclude that Dr. Moyer relied **more** heavily on Plaintiff's self-reports than she did on her observations of Plaintiff and the results of objective testing. Like Dr. Drenguis, Dr. Moyer was entitled to consider Plaintiff's subjective reporting about her symptoms and limitations and there is no indication she relied on that to a greater extent than she relied on her observations of Plaintiff and the results of the objective testing. In her September 2013 opinion, Dr. Moyer noted Plaintiff had a positive straight leg raise test bilaterally, tender to palpation of the low back pain, and that x-rays in March 2012 showed signs of loss of disc height at L5-S1. (AR at p. 413). In her October 2014 opinion, the doctor noted that Plaintiff experienced pain with active/passive range of motion testing of the lumbar spine. (AR at p. 416).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

**SYMPTOMS AND LIMITATIONS TESTIMONY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found Plaintiff's testimony was inconsistent with Dr. Drenguis's objective findings and the "[s]ubsequent record did not show any significant changes in the findings since . . . March 2015." (AR at pp. 468-69). What the ALJ overlooked, however, is Dr. Drenguis's emphasis that Plaintiff's "morbid obesity is markedly exacerbating her symptoms of a chronic lumbar DJD and osteoarthritis of her knees." (AR at p. 342). Paragraph Q of Listing 1.00 relating to the "Musculoskeletal System" addresses the "Effects of obesity" and states:

> The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 13**

> listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

Dr. Drenguis undoubtedly offered enough in the way of objective findings to support his diagnoses of "mild DJD of the lumbar spine and bilateral knee DJD, left worse than right" (e.g., x-ray findings, positive straight leg raising test). (AR at pp. 340-41). And considering Plaintiff's morbid obesity, substantial evidence in the record supports the limitations opined by Dr. Drenguis which are not inconsistent with anything testified to by the Plaintiff.

The Ninth Circuit has recognized there are differences between activities of daily living and full-time employment. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996). See also *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer"). Because "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit had held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick*, 157 F.3d at 725.

Th ALJ found Plaintiff did not have any problems completing her personal care; she helped care for her husband and daughter which included making sandwiches and cooking simple dinners once a day and taking her daughter to the bus; she kept house by cleaning and washing dishes "in brief increments;" and during

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

the summertime, she walked around a track for exercise. (AR at p. 464). The ALJ noted that Plaintiff went shopping with her husband who assisted her because of her pain, and that she attended her daughter's sporting activities and attended church. (*Id.*). The ALJ further noted that Plaintiff went on a five day trip with her husband to Hawaii in 2013 which involved flying from Yakima to Seattle and then Seattle to Oahu, and once in Hawaii, Plaintiff "ate in restaurants, walked around the immediate outside areas of her hotel, went snorkeling, and rode the trolley." (*Id.*).

It is not readily apparent how the activities cited by the ALJ are inconsistent with the limitations claimed by Plaintiff and how they suggest Plaintiff could meet the demands of a full-time job compatible with the physical RFC determined by the ALJ. Plaintiff testified that on her trip to Hawaii, she was unable to walk to the beach from her hotel even though it was only a couple of blocks away (AR at p. 58); "snorkeling" consisted of standing waist-deep in the water (AR at p. 63); and during the flight to Hawaii, she arranged with the flight attendant to move around and took hydrocodone for pain (AR at p. 65). Contrary to the ALJ's assertion, moving around on a flight is not inconsistent with Plaintiff's reported inability to stand for long periods of time.

According to the ALJ, the record showed that Plaintiff left her job at Subway because was going to be fired and had already been suspended for spending too much time in the office while at work. (AR at p. 469). The Plaintiff testified, however, that the reason she was spending so much time in the office was that she could not stand long enough to complete work shifts and therefore, had to rest frequently in the office. (AR at pp. 47-48; 63; 349; 497-98). And, as the ALJ noted in his decision, this is what Plaintiff told Michelle T. Zipperman, M.D., during a consultative psychological examination in April 2013: she quit her job because she was unable to stand for 10 hour shifts and lift freight. (AR at p. 469).

The ALJ observed that during an emergency room visit in September 2012 for

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

abdominal epigastric pain, the examining physician reported that Plaintiff appeared "somewhat overly dramatic" for the symptoms claimed. (AR at p. 234). This is not a clear and convincing reason to discount Plaintiff's testimony regarding symptoms and limitations arising from her musculoskeletal impairments. Likewise, Dr. Moyer's comments during a January 2013 examination that the left arm pain reported by Plaintiff was not consistent in its location (AR at p. 286) and that although Plaintiff thought her left hand was swollen, the doctor could not objectively tell any difference (AR at p. 287), are not clear and convincing reasons. Dr. Moyer did not question whether Plaintiff's left arm pain complaint was genuine.

The ALJ asserted that Plaintiff had failed to follow through with "treatment recommendations" regarding diet and exercise. (AR at p. 470). According to the ALJ:

> A lack of treatment follow through is [a] consideration in determining her residual functional capacity, and while her more recent efforts are encouraging and positive, such lack of follow through years ago suggests that her residual functional capacity would likely have been higher than the sedentary level if she had followed treatment recommendations regarding a sustained effort toward weight control year[s] ago.

(*Id.*).

The issue here is "recommended" treatment versus "prescribed" treatment. Even in cases of failure to follow prescribed treatment for obesity, it is rare that the Commissioner will deny benefits. SSR 02-1p (2002). "A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." (*Id.*). "Prescribed treatment does not include lifestyle modifications, such as dieting, exercise, or smoking cessation." SSR 18-3p (2018). Accordingly, Plaintiff's lack of success in complying with recommended treatment is not a clear and convincing reason to discount her testimony about the severity of her symptoms and the extent of her physical limitations.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Treichler*, 775 F.3d at 1099, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be

resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

The ALJ failed to offer legally sufficient reasons for rejecting the opinions of Drs. Drenguis and Moyer, and for discounting Plaintiff's testimony regarding the severity of her symptoms and the extent of her physical limitations. There are no outstanding issues which need to be resolved before a determination of disability can be made, especially in light of the fact this matter was previously remanded for a second administrative hearing. There is no question the Plaintiff is disabled. Per Dr. Drenguis, Plaintiff could not meet exertional demands for an entire eight hour workday. Per Dr. Moyer, Plaintiff would average four absences from work per month. VE Lear testified that employers typically allow only one unscheduled absence per month. (AR at p. 505). VE Mullinax testified at the earlier administrative hearing that missing two days of work per month would preclude gainful employment. (AR at p. 71).

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 18) is **DENIED**. The Commissioner's decision is **REVERSED**.

Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for an immediate award of Title II disability insurance benefits based on an onset date of June 1, 2012. An application for attorney fees may be filed by separate motion.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 18**

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this   27th   day of September, 2019.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 19**